<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *GLORIA HINSINGER*, individually and as an assignee of both NJ RECOVERY AND TOWING, LLC, and FRANK J. RODRIGUEZ, individually and as an agent, servant, and/or employee of NJ Recovery and Towing, LLC, <br><br> Plaintiff, <br><br> v. <br><br> **CONIFER INSURANCE COMPANY,** <br><br> Defendant. | Civil Action No. 20-14753 (ZNQ) (RLS) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Conifer Insurance Company ("Defendant" or "Conifer"). (ECF No. 10.) Defendant filed a Brief in Support of its Motion ("Moving Br.", ECF No. 10-2). Plaintiff Gloria Hinsinger ("Plaintiff") filed a Brief in Opposition ("Opp'n Br.", ECF No. 11). Defendant filed a Reply in Support of its Motion ("Reply Br.", ECF No. 13).

The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Dismiss.

1

I. BACKGROUND

A. The Parties

Defendant is incorporated in the State of Michigan and has its principal place of business in Michigan. (ECF No. 6, First Amended Complaint ("FAC") at 1, ¶ 2.[1]) Defendant insured NJ Recovery and Towing, LLC ("NJ Recovery") and Frank J. Rodriguez ("Rodriguez"), an agent and employee of NJ Recovery (together, "the Insured"), with a commercial insurance policy number CICP000659 (the "Conifer Policy", attached as Exhibit B to Motion, ECF No. 10-5), which was effective for the period of July 19, 2016 to July 19, 2017. (*Id.* at 2, ¶¶ 5–6.)

Plaintiff is a resident of New Jersey. (*Id.* at 1, ¶ 1.) In a prior suit, the "Underlying Action," Plaintiff sued NJ Recovery and Rodriguez for damages stemming from injuries she suffered during a vehicle accident. The case settled in March 2020, and the settlement included an assignment to her of the Insured's rights against Defendant. Plaintiff now sues Defendant.

B. Factual and Procedural Background

On November 18, 2016, Plaintiff was personally struck by Rodriguez, who reversed his HINO 238 Flatbed (the "HINO") into her in a parking lot located in the Ocean County, New Jersey. (*Id.* at 3, ¶ 5.) On or about December 21, 2016, Plaintiff filed a suit in New Jersey Superior Court against Rodriguez and NJ Recovery. (*Id.* at 2–3, ¶ 6.) A Loss Notice ("Notice") for the accident incorrectly identified the vehicle involved in the incident as a 2016 Dodge-Wrecker 5500 Truck Tractor Trailer ("Dodge-Wrecker"). (*Id.* at 3, ¶ 9.) On or about April 3, 2017, Defendant sent a "Reservation of Rights" letter ("First Conifer Letter") to NJ Recovery and agreed to provide a defense for the Insured. (*Id.* at 3, ¶ 10.) Around October 2018, Plaintiff was notified that the

---

[1] The Court refers to the First Amended Complaint by page numbers because its paragraph numbering scheme restarted for each Count, *i.e.*, Count I is asserted in paragraphs 1–11 that begin on page 5, and Count II in its own paragraphs 1–5 that begin on page 8. The Amended Complaint also lacks its own page numbers. The ones identified are the numbers assigned by the Court's CM/ECF system.

Insured no longer possessed the Dodge-Wrecker, and she sought supplementary document production from Defendant. (*Id.* at 4, ¶¶ 15–16.) Body camera footage from an officer at the accident scene revealed that the vehicle involved the HINO, not the Dodge-Wrecker. (*Id.* at 4, ¶ 17–18.) Only the Dodge-Wrecker, not the HINO, was covered under the Conifer Policy. (*Id.* at 3, ¶ 10.)

On March 11, 2019, Defendant sent a "supplement" to the "Reservation of Rights" letter ("Second Conifer Letter") to NJ Recovery and disclaimed any obligation to indemnify in the Underlying Action. (*Id.* at 4, ¶ 15.) The Second Conifer Letter identified, for the first time, that the tow truck involved in the vehicle accident (the HINO) was not a covered vehicle under Defendant's insurance policy. (*Id.*) On June 17, 2019, Defendant tendered defense and indemnity for NJ Recovery in the Underlying Action to Progressive Insurance ("Progressive"), the insurer that insured the HINO at the time of the accident. (ECF No. 10-10). On August 14, 2019, Progressive accepted Defendant's tender and agreed to provide a defense and indemnity coverage for the Underlying Action. (ECF No. 10-11.) On August 29, 2019, counsel appointed by Progressive was then substituted in the Underlying Action. (ECF No. 10-12.) On March 31, 2020, the New Jersey Superior Court entered a Consent Order Confirming Settlement, with Entry of Judgment and Assignment of Rights finding in favor of Plaintiff against NJ Recovery, Rodriguez, and other named defendants in the amount of $750,000. (*Id.* ¶ 16; ECF No. 6-1.)

Plaintiff then filed this suit against Defendant in Mercer County Superior Court. Defendant removed it here on October 21, 2020. (ECF No. 1.) On November 20, 2020, Plaintiff filed an Amended Complaint seeking (1) declaratory judgment that Defendant waived and/or is estopped from disclaiming coverage (Count I) and (2) damages for breach of the implied covenant of good

3

faith and fair dealing (Count II).  (FAC at 5–10.)  On January 5, 2021, Defendant filed this Motion to Dismiss.

## II. JURISDICTION

In light of the diversity of the parties as set forth above, and the amount in controversy pled in the Amended Complaint exceeding $75,000 (FAC at 2, ¶ 5), the Court exercises diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## III. LEGAL STANDARD

"In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York,* 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted).  To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a motion to dismiss attaches or relies on documents extrinsic to the pleadings, the court must first consider whether such documents may permissibly be considered.  Courts may consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *United States v. Estate of Elson*, 421 F. Supp. 3d. 1, 5 (D.N.J. 2019) (quoting *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.s7 (3d

Cir. 2016)). When presented with extrinsic documents not properly considered on a motion to dismiss, the court may disregard them, deny the motion, or convert it into a motion for summary judgment and provide a reasonable opportunity for all parties to present material pertinent to the motion. *See* Fed. R. Civ. P. 12(d); *Dix v. Total Petrochemicals USA, Inc.*, Civ. No. 10-3196, 2011 WL 2474215, at *2 (D.N.J. June 20, 2011).

### IV.   DISCUSSION

#### A.   Choice-of-Law

"A federal court exercising diversity jurisdiction is to apply the choice-of-law rules of the forum state." *General Ceramics Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 652 (3d Cir. 1995) (citation omitted). Here, while Defendant is a Michigan resident, the parties do not raise a choice-of-law issue and they appear to agree that New Jersey law applies because their filings all reference and cite to New Jersey law. Accordingly, the Court will apply New Jersey law.

#### B.   Use of Extrinsic Documents

Plaintiff argues that Defendant's exhibits to its motion are extrinsic to the Amended Complaint and arguably merit converting its motion into one for summary judgment. (Opp'n Br. at 2). She concedes, however, that the Court can avoid this should it find the doctrine of "incorporation by reference" applies to these documents. (*Id.*)

Here, the documents attached to Defendant's motion include: a copy of the relevant language of the Conifer Policy (ECF No. 10-5); a copy of the Notice submitted by NJ Recovery to Defendant ("January 2017 Notice to Defendant"), dated January 19, 2017 (ECF No. 10-7); a copy of the First Conifer Letter, dated April 3, 2017 (ECF No. 10-8); a copy of the Second Conifer Letter (ECF No. 10-9); a copy of Defendant's tender letter to Progressive ("Tender Letter to Progressive"), dated June 17, 2019 (ECF No. 10-10); a copy of Progressive's acceptance of tender

5

("Progressive's Acceptance of Tender Letter"), dated August 14, 2019 (ECF No. 10-11); a copy of the filing for Substitution of Attorney (ECF No. 10-12); and the Consent Order, dated March 31, 2020 (ECF No. 10-13).

The Conifer Policy, the January 2017 Notice to Defendant, the First Conifer Letter, the Second Conifer Letter were referenced and relied upon by the Amended Complaint, therefore they may be properly considered for the purposes of this Motion under Rule 12(b)(6), without converting it to one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). By contrast, the Tender Letter to Progressive, Progressive's Acceptance of the Tender Letter, and the Substitution of Attorney were not referenced or relied upon in the Amended Complaint, therefore they will not be considered for the purposes of this Motion.

### C. Declaratory Judgment of Coverage by Estoppel (Count I)

1. Plaintiff's Standing to Raise Count I

As a first matter, Defendant argues that Plaintiff lacks standing to raise her Count I claim because it is premised on estoppel and because she is a third party to the insurance agreement. Thus, allowing her to bring an estoppel claim would run contrary to New Jersey law because such a claim is "entirely dependent on whether an insurer's conduct has prejudiced an insured and prejudice to a third[-]party claimant is not a consideration in evaluating an estoppel claim." (Moving Br. at 14.) Defendant further contends that New Jersey courts have not recognized the right of a third party to bring an estoppel claim against an insurer. Defendant also argues that the New Jersey Appellate Division has observed that such a right has "inherent issues," citing *Northfield Ins. Co. v. Mt. Hawley Ins. Co.*, 454 N.J. Super. 135 (App. Div. 2018). (*Id.*) Plaintiff does not dispute Defendant's standing argument.

6

Defendant's challenge is a facial attack to Plaintiff's standing as an individual to pursue her estoppel claim against Conifer. As a stranger to the Conifer Policy, the Court agrees that she lacks standing to pursue either of her claims against Conifer.[2] *See Smith v. Frederick Mut. Ins. Co.*, Civ. No. 21-11787, 2022 WL 73492, at *2 (D.N.J. Jan. 7, 2022). This is not fatal to her suit, however, because she does have standing to pursue her claim as an assignee of Defendants NJ Recovery Rodriguez. *Id*. These identities are distinct and severable. She can be dismissed as an individual, while being permitted to proceed as an assignee. *See Med-X Global, LLC v. Azimuth Risk Solutions, LLC*, Civ. No. 17-13806, 2018 WL 4089062, at *3 (D.N.J Aug. 27, 2018). The Court will therefore dismiss Plaintiff in her individual capacity.

1. Whether Coverage Can Be Expanded to Loss Not Covered Under Conifer Policy

Count I of the Amended Complaint asserts that Conifer has waived and is estopped from disclaiming coverage under the Conifer Policy.[3] More specifically, Count I first asserts that Defendant is estopped from disclaiming coverage under the Conifer Policy for all sums that the Insured are obligated to pay by reason of liability for damages, either by way of settlement, judgment or otherwise in connection with the Underlying Action alleging injury during the term of the Conifer Policy. (FAC at 5, ¶ 2.) Count I also asserts that Defendant is estopped from disclaiming the duty to reimburse any and all defense fees and costs incurred following

---

[2] Although not raised by Defendant, the Court *sua sponte* concludes for the same reasons that Plaintiff also has standing as assignee to bring Count II, but not as an individual. *See Wayne Land and Mineral Grp, LLC, v. Delaware River Basin Comm'n*, 959 F.3d 569 (3d Cir. 2020) (Article III standing is a threshold issue, therefore federal courts are obligated to raise it *sua sponte*). This conclusion is, necessarily, separate from the Court's conclusion as to Count I because standing considerations require a claim-by-claim assessment. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief that is sought.") (citations omitted).

[3] As a preliminary matter, the Court finds that Plaintiff's combined reliance on waiver as a basis for her claim is ill-founded. As the New Jersey Supreme Court in *Eggleston* observed, "where the policy does not cover the loss, it seems inaccurate to speak of a 'waiver' since there is nothing to waive. Rather the relevant thought is 'estoppel[.]'" 37 N.J. at 129. The undersigned finds this articulation persuasive and therefore rejects the portions of Count I that purport to invoke waiver. Accordingly, the Court considers only her allegations and arguments premised on estoppel.

7

Defendant's relinquishment of its control of the defense and the assumption of the defense by new counsel. (*Id.* ¶ 3.)

In basic terms, Count I essentially alleges that Defendant knew or should have known that the vehicle in the accident was not covered by the Conifer Policy at least as early as when it received the police body camera footage from the incident scene showing the damaged HINO. Notwithstanding this apparent failure, Defendant assumed and maintained control of the defense for the Insured for a period of over two years. Plaintiff alleges that Defendant's control of the defense prejudiced her (as assignee) because Defendant did not itself pursue a third-party claim against NJ Recovery's insurance broker and/or agent (who prepared the report that erred by identifying the wrong vehicle), and by the time Defendant relinquished control of the defense, any such claim was barred by the applicable statute of limitations.

"Estoppel is a doctrine applied at law and in equity for the purpose of precluding a party from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." *Northfield Ins. Co. v. Mount Hawley Ins. Co.*, 454 N.J. Super 135, 145 (App. Div. 2018) (quotations and citations omitted). When an insurer takes on the defense of a claim against its insured, liability "grounded on the doctrine of waiver or estoppel" is imposed on the insurer when the undertaking is done with "full knowledge of the fact" and in the absence of a non-waiver agreement between the parties. *Nazario v. Lobster House*, Civ. No. 07-3025, 2009 WL 1181620, at *5 (N.J. Super. Ct. App. Div. May 5, 2009) (interior quotation marks omitted).

Defendant makes several arguments as to why Plaintiff's claim for estoppel fails to state a claim: (1) the doctrine of estoppel cannot be used to expand coverage to losses not covered by policy; (2) a *prima facie* case for an estoppel claim cannot be made in this case even if the doctrine

of estoppel applies; and (3) NJ Recovery's inaccurate loss notice bars Plaintiff's claim for estoppel.[4] (Moving Br. at 9–14.) The Court considers each of these arguments in turn below.

Defendant argues that the HINO was not covered by the Conifer Policy, and that it is clear in New Jersey that waiver or estoppel cannot be used to bring it within coverage. (Moving Br. at 9) (citing cases). Plaintiff insists that the instant matter fits into a "narrow band of cases" in which New Jersey courts have estopped insurers from denying coverage due to the insurer's defense of the insured under a defective reservation of rights, such that coverage can be created or extended under *Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114 (1962) ("*Eggleston*") and its progeny. (Opp'n Br. at 5–8.)

Unfortunately for Conifer, the New Jersey Supreme Court has explicitly held to the contrary: "[u]nder certain circumstances an insurance carrier may be estopped from asserting the inapplicability of insurance to a particular claim against its insured despite a clear contractual provision excluding the claim from the coverage of the policy. . . . The strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a law suit based upon a claim against its insured." *Griggs v. Bertram*, 88 N.J. 347, 355–56 (1982). With the principle firmly established that New Jersey law permits estoppel to bar denial of coverage despite an exclusion, the question before the Court becomes whether the Amended Complaint adequately pleads a situation that warrants estopping Conifer from its denial.

Conifer argues that this case does not fall within the circumstances contemplated by *Griggs* because it had no knowledge of the facts on which to disclaim coverage, *i.e.*, it was unaware the wrong vehicle had been identified. (Moving Br. at 11.) In fact, it argues that NJ Recovery led it to believe that the insured vehicle caused the accident. (*Id.*) On Reply, Conifer asserts that it did

---

[4] As noted above, Defendant also challenges Plaintiff's standing to bring an estoppel claim. The Court has already concluded, supra, that she has standing to do so as assignee of the Insured.

not have reason to question the vehicle at the time it was notified of the accident and issued the First Conifer Letter, because it was not until "the course of discovery," after the appointment of defense counsel that the identity of the vehicle in the incident was revealed. (Reply at 4–6.)

Conifer's claim to ignorance does not address the pleadings in the Amended Complaint that allege Conifer had actual or constructive knowledge that the wrong vehicle was identified because it was in possession of police body camera footage that would have made the error clear. Not surprisingly at this early stage of the case, the Amended Complaint is imprecise as to when Plaintiff believes Defendant obtained that footage. At one point, the Amended Complaint asserts that the footage was in Defendant's and/or its counsel's possession "for an untold length of time prior to its transmittal to Plaintiff." (FAC at 4, ¶ 18.) Precisely when this transmittal took place is not stated, only that the footage was disclosed following an exchange that started in October 2018 between counsel in the underlying suit. (FAC at 4, ¶ 16). Separately, the Amended Complaint also asserts that Conifer had "knowledge for, at a minimum, five months, that its interests were adverse to that of its insured," but only issued the Second Conifer Letter on March 11, 2019. (*Id*. at 5, ¶ 15). Counting five months back from March, this can be reasonably read to assert that Defendant had possession of the body camera footage in approximately October 2018. Finally, the Amended Complaint alleges that Conifer "had actual or constructive knowledge that the incident did not fall within the coverage available" "throughout the more than two (2) year period in which Conifer controlled the defense." (*Id*. at 6, ¶ 5.) Given that the Second Conifer Letter that surrendered control of the litigation to the Insured was issued in March 2019, this allegation charges Conifer with knowledge as early as March 2017, even before the issuance of the First Conifer Letter.

Based on these allegations, the Court finds that the Amended Complaint plausibly alleges that Conifer knew the wrong vehicle was identified well before it issued the Second Conifer Letter. Conifer's mere arguments to the contrary cannot succeed on this motion to dismiss. Accordingly, the Court rejects Conifer's argument that its lack of knowledge warrants dismissal of Count I.

Conifer also argues that Plaintiff cannot establish that detrimental reliance was suffered by NJ Recovery because Conifer disclaimed coverage when it learned the incorrect vehicle had been identified and agreed to provide NJ Recovery with a courtesy defense while it contacted the correct insurer. (Moving Br. at 12.)

Like Conifer's denial as to its knowledge, its dispute as to the Insured's prejudice is also at odds with the Amended Complaint, which specifically pleads that the Insured *did* suffer prejudice based on its reliance on Conifer, "including, inter alia, Conifer and defense counsel's failure to bring a third-party claim against NJ Recovery's insurance broker and/or agent within the applicable statute of limitations." (FAC at 7, ¶¶ 9, 10.)  Accepting these allegations as true as it must on a motion to dismiss, the Court rejects Conifer's challenge to estoppel premised on a purported lack of prejudice.

Defendant separately contends that it properly reserved its rights with the issuance of the Second Conifer Letter because the Insured was made aware of, and accepted the terms of, the defense offered by Defendant when it provided the Insured with a "courtesy defense" and the Insured remained silent. (Moving Br. at 12 (citing *Northfield*, *supra*; Reply Br. at 6.)

Plaintiff does not dispute the adequacy of the reservation of rights language in the Second Conifer letter.  Instead, she argues that the Letter was too late to be effective because it was issued almost two and a half years after she filed her Complaint in the underlying suit, with Conifer controlling the defense of that suit the entire time. (Opp. Br. at 11).  Under the circumstances,

Plaintiff describes the Second Letter as an ill-fated attempt at "closing the stable door after the horse has bolted." (*Id.*)

In *Northfield*, the Appellate Division concluded that the insurer carrier was not estopped from denying coverage to its insured, even if it "was less than clear in communicating with [the insured] or failed to adequately obtain [the insured's] consent either expressly or by an assumption of its acquiescence through silence." 454 N.J. Super. at 146.  The court held that the insurer did not need to use "certain magic words in communicating with its insured" to avoid estoppel as an insurer's disclaiming letter could reasonably be interpreted as conveying an offer rather than a unilateral declaration of a right to control the defense. *Id.* at 138.  It reasoned that the evidence was inconclusive to show that the insured detrimentally relied on the insurer because the parties' interests were aligned. *Id.* at 146–47.

*Northfield* is distinguishable on multiple grounds.  First, as Plaintiff points out, the "courtesy letter" in *Northfield* was sent at the outset of the case. (Opp'n Br. at 11.)  It is difficult to construe the Second Conifer Letter as an analogous offer of a "courtesy defense" that was accepted by the Insured's silence, when Conifer had already controlled the defense for approximately two years after the issuance of the First Conifer Letter.

Second, the Appellate Division's decision in *Northfield* was based partly on its finding that the evidence in the record was inconclusive as to whether the insured detrimentally relied on Northfield, given that the Northfield's interests were aligned with its insured's interests. 454 N.J. Super. at 146–47.  Here, as discussed above, the Court has already found that the Amended Complaint adequately pleads prejudice that flows from the Insured's reliance on Conifer.

Finally, *Northfield* was decided on summary judgment, based on a fully developed record, whereas this case has not proceeded beyond the pleadings. Notably, it has yet to be established when Conifer had actual or constructive knowledge that the wrong vehicle had been identified.[5]

### 2. Whether Insured's Inaccurate Initial Loss Notice Bars Recovery

Defendant argues that the principles of equity do not support what would amount to a double recovery for NJ Recovery as it "should not be given windfall at [Defendant's] expense since it was the one who misrepresented critical information [in identifying the vehicle in the Notice]." (Moving Br. at 13.) Plaintiff argues that Defendant's argument is improper because it "amounts to an as-of-yet unpled affirmative defense" and relies on evidence that is outside the scope of a Rule 12(b)(6) motion. (Opp'n Br. at 12.) Plaintiff contends that the allegations in the Amended Complaint and the Notice, which "appears to indicate it was prepared by NJ Recovery's insurance agent," do not support Defendant's assertion that NJ Recovery was responsible for the preparation of the Notice. (*Id.*)

As a first matter, the Court rejects Conifer's characterization of this suit as an attempt at double recovery. The Amended Complaint, notably by the attached Consent Judgment, makes clear that the while Plaintiff has obtained some relief by virtue of the settlement of her claim in the Underlying Action, that settlement did not satisfy the entire judgment.

As to the inaccurate Notice, it erroneously indicates that the Dodge-Wrecker was involved in the accident between Plaintiff and Rodriguez and shows only that it was prepared by American Transportation Insurance Group. (ECF No. 10-7.) There are a host of factual questions underlying Defendant's unclean hands defense that are beyond the scope of this Motion to Dismiss, including

---

[5] The Second Conifer Letter itself suggests that Conifer should have been aware the wrong vehicle had been identified at least as early as April or June 2018 when Rodriguez—the driver of the vehicle involved in the incident—correctly identified the vehicle involved during his depositions. For reasons as yet unclear, the Second Conifer was not issued until March 2019.

13

where American Transportation obtained its (incorrect) information, whether its Notice constitutes a misrepresentation within the meaning of the case law cited by Defendant, whether NJ Recovery should be held responsible for any such misrepresentation, and when the parties to the underlying suit knew or should have known that the wrong vehicle was identified by the Notice. Therefore, the Court cannot determine at this stage whether the inaccurate Notice might serve as an equitable bar to Plaintiff's recovery.

For all of the reasons set forth above, the Court concludes that Plaintiff has pled a plausible claim for Declaratory Judgment (Count I). Accordingly, the portion of the Motion seeking to dismiss this claim will be DENIED.

### D. Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

The Amended Complaint alleges two main bases for Count II. First, it alleges Defendant failed to conduct an objectively adequate investigation or claim analysis of the Underlying Action, and also provided an objectively inadequate defense and/or made objectively inadequate efforts to settle the Underlying Action. (*See* FAC at 9, ¶¶ 3(a)–(b).) Second, the Amended Complaint alleges that Defendant controlled the defense of the Underlying Action under a deficient "reservation of rights," without the express consent of the Insured, and did so with actual and/or constructive knowledge that its interest was adverse to the Insured's interests. (*See id*. at 9, ¶¶ 3(c)–(d).)

In the Motion, Defendant contends that Count II fails to state a claim because it correctly denied coverage, given that it is undisputed that the HINO involved in the accident was not covered by the Conifer Policy. (Moving Br. at 6.)

In her Opposition, Plaintiff argues that her claim is nevertheless plausible under New Jersey cases upholding bad faith claims under similar circumstances, even if her claim doesn't "neatly fit" in the categories promulgated in *Pickett v. Lloyd's*. (Opp'n Br. at 15–18.) On Reply, Defendant distinguishes Plaintiff's cases. (Reply at 1, 9–11.)

Broadly speaking, an insurance policy is an agreement that "set[s] forth in fundamental terms, the general outlines of coverage." *Hardy v. Abdul-Matin,* 198 N.J. 95, 102 (2009) (citation omitted). An implied duty of good faith and fair dealing is implied for all contracts in New Jersey and requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 464 (D.N.J. 2002) (quoting *Palisades Props., Inc. v. Brunetti,* 44 N.J. 117, 130 (1965)). An insurer owes a duty of good faith to its insured in processing a first-party claim. *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993).

In *Pickett*, the New Jersey Supreme Court adopted a tortious cause of action against an insurer for bad-faith failure to pay an insured's claim. 131 N.J. 457, 470 (1993). It identified three situations in which a bad faith claim might be shown: (1) the denial or refusal to pay a claim or benefit, where there were "no debatable reasons that existed for the denial"; (2) the delay in the process to pay a claim or benefit, where "no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay"; and (3) "the inattention to payment of a valid, uncontested claim," where the insurer's conduct was unreasonable and the insurer knew or recklessly disregarded that the conduct was unreasonable. *Id.* at 474, 481. *Pickett* clarified that "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim." *Id.* at 473 (citation omitted).

Here, Conifer's belated denial of coverage, as alleged, does not neatly fit into any of *Pickett's* enumerated categories. Still, the Court has found Plaintiff pleads a plausible claim based on estoppel and further finds that her claim falls into *Pickett's* broader, permissible category of bad faith claims because she could "establish as a matter of law a right to summary judgment on

[her] substantive claim" based on her asserted estoppel theory.  In at least one case, the New Jersey Appellate Division has affirmed that an insurance carrier acts in bad faith if it breaches its fiduciary duty to investigate and settle a claim in good faith.  *See New Jersey Mfrs. Ins. Co. v. National Cas. Co.*, 393 N.J. Super. 340, 354 (App. Div. 2007).

Accordingly, the Court finds that the Amended Complaint's claim for breach of the implied covenant of good faith and fair dealing (Count II) pleads a plausible claim for relief.  This portion of the Motion will therefore also be DENIED.

V.       **CONCLUSION**

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Dismiss.  The Motion will be GRANTED insofar as Plaintiff will be dismissed in her individual capacity for lack of standing, but the Motion will otherwise be DENIED.

Date: **December 20, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
